PLOTKIN, Judge.
Defendant Simmons Company seeks supervisory review of a judgment by a workers’ compensation judge denying its exception of lack of subject-matter jurisdiction. We grant the writ, but deny relief, finding no error in the holding that the decedent’s employment was “principally localized” in Louisiana, meaning the Louisiana Office of Workers’ Compensation has subject-matter jurisdiction.[1]

Statement of the Case

In November of 1997, Brenda Cook-Robinson, the widow of Leon Robinson, filed a disputed claim for compensation with the Office of Worker’s Compensation, seeking benefits on behalf of herself and her minor daughter. Mrs. Robinson alleged that her husband, Leon Robinson, was employed by jSimmons, as “a sales representative assigned to the Chicago territory at the time of his death.”
On March 2,1998, Simmons and its insurer filed an exception of lack of subject-matter jurisdiction alleging that the Louisiana Office of Worker’s Compensation has jurisdiction over the claim under the provisions of LSA-R.S. 23:1035.1, relative to “extraterritorial coverage” of Louisiana’s workers’ compensation statutes. That statute provides as follows:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be enti-tied to the benefits provided by this Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state.
In filing its exception, Simmons made the following allegations: (1) the contract of employment between Leon Robinson and Simmons was entered in Atlanta, Georgia, and (2) Leon Robinson was a salesman whose sales territory did not cover Louisiana at the time of his death. Thus, Simmons claims that benefits are precluded under the above statute, and that the Office of Worker’s Compensation lacks subject-matter jurisdiction.
In opposition to the exception, Mrs. Robinson admitted that her husband’s sales territory at the time of his death did not include Louisiana, but alleged that he was working a temporary assignment. Moreover, she alleged that the renegotiation of her husband’s sales territory and salary constituted a rehiring, which resulted in a contract for hire in Louisiana.
jAfter considering arguments of both parties, the worker’s compensation judge denied Simmons’ exception, finding as follows:
1. The parties entered a contract for hire in Louisiana on March 22, 1996. It was the intent of the parties that claimant maintain his employment in Louisiana. And claimant’s assignment to work territories outside of Louisiana was temporary.. See Lackvold[Lakvold] v. Stevens Transport, 665 So.2d 828 (La.App. 1st Cir.1995).
2. Claimant operated exclusively in New Orleans for approximately 2 years therefore [sic] his employment was localized principally in Louisiana. Further defendant/employer never expressed an interest in relocating claimant from the New Orleans area. To the contrary, it was the employer’s intent to assist claimant in re-establishing his New Orleans territory.
*29 (Citations to exhibits and footnote omitted.) Simmons seeks supervisory writs from this court.

Facts

Since determination of whether the Louisiana Office of Workers’ Compensation is fact sensitive in this case, the following summary of undisputed facts surrounding Leon Robinson’s employment with Simmons is necessary.
Mr. Robinson was employed by Simmons as a salesman, contacting retailers and sell mattresses to them, from April of 1970 through October of 1996. Initially, he was hired pursuant to a contract of employment executed with a regional sales manager in Atlanta, Georgia. His original territory was in Indiana; however, in January of 1994, Mr. Robinson accepted a position in the Atlanta Region, assuming responsibility for the New Orleans territory.
In March of 1996, a problem arose with Mr. Robinson’s employment with Simmons, the result of a complaint filed by a business which constituted two-thirds of his territory; Mr. Robinson was removed from his duties servicing that ^account, which left him with only one-third of his prior territory. As a result, Ken Barton, the Senior Vice President of Human Resources, sent Mr. Robinson a letter on March 22, 1996, setting forth new terms of employment.
Specifically, the letter called for the following changes in the terms of employment: Mr. Robinson was to work for the company from March 1, 1996 to May 31, 1996 and receive $5,000 monthly compensation. During that time he was to perform any duties requested, and he could apply for any other sales positions that became available with Simmons. The letter further stated that if Mr. Robinson did not secure another sales position with Simmons by May 31, 1996, his employment would be terminated on that date. However, he would continue to receive payments of $5,000 for the next six months. At the end of the letter was the following statement: “Please sign below if you accept benefits and terms described above .” That statement was followed by two lines, one for Mr. Robinson’s signature and one for the date. Apparently, Mr. Robinson never signed the letter.
On June 4, 1996, Mr. Barton sent Mr. Robinson another letter recapping a telephone conversation which allegedly occurred on May 22, 1996. In that letter, which was sent to Mr. Robinson at his New Orleans address, Mr. Barton intimated that Mr. Robinson had not aggressively pursued a position for the Los Angeles territory. Mr. Barton stated that because of Mr. Robinson’s lack.of interest in the Los Angeles territory and his desire to work with him in creating a New Orleans Territory, another candidate would be hired for the Los Angeles territory. Acknowledging that Mr. Robinson was not interested in the positions for the Alabama, Memphis, and Tennessee territories, Mr. Barton stated that he bwas still trying to establish a territory in New Orleans that would fit Mr. Robinson’s request. He further stated that he accepted Mr. Robinson’s commitment to actively pursue the next sales position that became available and that fit his needs. In the meantime, Mr. Barton stated he was setting up a “job out of corporate [sic] calling on stores of national accounts and possibly filling in for the current territory in Memphis until someone was hired for that job. ” Mr. Barton stressed that the job was a temporary assignment until a full-time territory could be found.
Effective July 1, 1996, Mr. Robinson commenced working in the new position which required him to call on stores in the states of Wisconsin, Indiana, Illinois and Ohio. His job called for him to work “out of his home” in New Orleans and for him to send call reports to Dan Sumner in Chicago, to Craig McAn-drews, and to Heilig Meyers.
On October 14, 1996, Mr. Robinson left New Orleans to fly to Chicago. His flight was scheduled to arrive in Chicago at 10:55 a.m.; Mr. Robinson had an appointment in Wisconsin on October 15, 1996. Sometime after he dropped off his previous week sales reports in Chicago on October 14, 1996, Mr. Robinson disappeared. His abandoned car was found in Gary, Indiana on October 31, 1996, and his bullet-riddled body was found in an abandoned lot in West Chicago in December of 1996.

*30
Jurisdiction of the Office of Workers’ Compensation

Determination of whether the worker’s compensation judge improperly denied the exception of lack of subject-matter jurisdiction depends, under LSA-feR.S. 23:1035.1, on whether she correctly determined that either of the two factors required by that provision existed in this case. In other words, if Mr. Robinson’s employment was “principally localized” in Louisiana, or Mr. Robinson was working under a contract of hire made in Louisiana at the time of his death, the Louisiana Office of Workers’ Compensation has jurisdiction under the “extraterritorial coverage” provision. Kennington v. H. Blume Johnson, Inc., 94-0744, p. 2 (La.7/1/94), 638 So.2d 1066, 1067; Stapleton v. Travelers Insurance Company, 359 So.2d 1051, 1053 (La.App. 3rd Cir.1978), writ, denied, 360 So.2d 1176 (La.1978).

“Principal location” of employment

In finding that Mr. Robinson’s employment was “principally localized” in Louisiana, the worker’s compensation judge relied on the following facts: (1) Mr. Robinson operated exclusively in New Orleans for approximately two years prior to taking the temporary assignment, (2) his employer never expressed an interest in relocating him from the New Orleans area, and (3) the employer evidenced an intent to assist the claimant in re-establishing his New Orleans territory.
Simmons points to the March 22, 1996 letter from Mr. Barton to Mr. Robinson as evidence that Mr. Robinson’s work was not “principally localized” in Louisiana. In the letter, Mr. Barton stated the company’s willingness to allow Mr. Robinson to remain in New Orleans with a reduced territory and an opportunity to develop it through new business, but indicated that Mr. Robinson was not interested in that arrangement. Further, the letter clearly evidenced an [/intention that.Mr. Robinson would apply for other sales positions that might become available. Moreover, Mr. Barton conveyed Simmons willingness to pay moving expenses for Mr. Robinson’s household belongings to be transferred to Chicago, Illinois, as well as a willingness to pay for placement services.
However, the record evidence indicates that Mr. Robinson did not accept the terms of Mr. Barton’s March 22, 1996 letter since he failed to sign the letter in the space provided. Further, Mrs. Robinson points to Mr. Barton’s letter dated June 4, 1996, in which he acknowledged Mr. Robinson’s desire to work with him in establishing a New Orleans territory. Although Mr. Robinson did accept a temporary assignment which required him to travel to the states of Wisconsin, Indiana, Illinois and Ohio, Mrs. Robinson claims that the parties always intended for Mr. Robinson to return to work in New Orleans after the temporary assignment.
Moreover, Mrs. Robinson claims that her husband worked out of his home in coordinating his sales activities in the Chicago area. In fact, Danny Cantrell, who authored a July 1, 1996 memorandum informing Simmons’ personnel of Mr. Robinson’s new assignment, specifically stated that Mr. Robinson would “work out of his house.” Nothing in the record suggests that Mr. Robinson was actually working out of the Chicago office, or that he had an office in Chicago or in any of his other territories. Mr. Robinson’s various expense reports for the latter two months of his employment all list his home address in New Orleans; those reports reflect that he generally left New Orleans headed for Chicago on Mondays.
Additionally, Mr. Robinson routinely flew out of New Orleans on Mondays, then traveled to Wisconsin or some other state during the week, and ^returned to New Orleans on Saturday. Additionally, he allegedly prepared his reports at his New Orleans home, and he often faxed reports to headquarters in Chicago. After commencing the temporary assignment, Mr. Robinson no longer spent the majority of his time in any one state; thus, the last place where his employment was principally localized was New Orleans, Louisiana.
Citing Johnson v. B & B Electric Contractors, 96-0159 (La.App. 4th Cir.2/19/97), 689 So.2d 728, Simmons argues that work history, rather than the particular employment relationship at the time of the injury, cannot form the basis for determining coverage un *31 der LSA-R.S. 23:1035.1. However, that case is factually distinguishable from the instant case because, despite the fact the claimant in Johnson was hired while residing in Louisiana, all work was performed in Kentucky, where his paycheck was hand-delivered. Moreover, the injury occurred in Kentucky, where the claimant lived and worked for a Kentucky corporation with its principal place of business in Kentucky.
In rejecting the contention that the claimant’s employment was “principally localized in this state,” this court specifically noted that the claimant never alleged that he performed any work for his employer in Louisiana or even that he returned to this state at anytime while he was employed by the employer. Moreover, the court said, the claimant did not allege that the employer had any offices in this state, that it had performed any work in this state, or that it contacted him in any way while he was still in this state.
Rejecting the claimant’s contention that the Louisiana Office of Workers’ Compensation had jurisdiction over his claim based on the fact that most of his work life had been performed in Louisiana, this Court noted that the controlling ^requirement for determining coverage must be based upon conditions existing at the time of the injury and emphasized the need for some type of relationship between the employer and this state or between the employment situs and this state. Significantly, the court stated as follows: “[W]e find no jurisprudence under this statute which would support Mr. Johnson’s argument that his work history, rather than the particular employment relationship at the time of injury, was intended to be a factor in determining coverage under § 23:1035.1(l)(a).” Johnson, p. 8, 689 So.2d at 732.
In the instant case, after examination of the record evidence concerning Mr. Robinson’s employment relationship with Simmons at the time of his death, we find no manifest error in the conclusion of the workers’ compensation judge that Mr. Robinson’s employment was principally localized in Louisiana. At that time, his home was in New Orleans, Louisiana, where Simmons had relocated him two years prior to his death. He had worked for Simmons primarily in Louisiana for at least two years before his death. Louisiana was the situs of his last permanent job with Simmons, as the position he was filling when he died in Illinois was admittedly a temporary position. He spent his weekends in New Orleans, Louisiana, and often faxed documents from that location to Simmons. More importantly, he was performing his temporary assignment from his home in New Orleans, Louisiana, a condition placed upon him by Simmons. Thus, it would appear his base of operations was New Orleans, Louisiana.

Contract for hire

Because we have determined that the workers’ compensation judge did not hoerror in finding that Mr. Robinson’s employment with Simmons was “principally localized” in Louisiana, it is unnecessary for us to consider her finding that Mr. Robinson worked for Simmons under a contract for hire executed in Louisiana. However, we note that Mr. Robinson was originally hired under a contract executed in Atlanta. Moreover, the March 22, 1996 letter from Mr. Barton to Mr. Robinson, which the workers’ compensation judge found to constitute a new employment contract, was never signed by Mr. Robinson. Thus, we disagree with the decision of the workers’ compensation judge on this issue.

Conclusion

Because we find no manifest error in the finding of the workers’ compensation judge that Mr. Robinson’s employment with Simmons was “principally localized” in Louisiana, we deny relief. The case is remanded to the trial court for further proceedings consistent with this decision.
RELIEF DENIED; REMANDED TO TRIAL COURT.

. The parties raise the issue of the appropriate method of appellate review of a judgment denying an exception of lack of subject-matter jurisdiction. However, it is well settled that such a judgment, like other interlocutory orders, is reviewable by an application for supervisory writs, if it is arguably incorrect. See Fine v. Rubin, 617 So.2d 86 (La.App. 4th Cir.1993).